MARTHA M. HUYLAR et al.

*v.*

THE CRAGIN CATTLE Co. et al.

Upon a petition stating that the stock of a corporation of this state has greatly depreciated in value; that the president has been using its property for his own benefit, no account of which appears in the regular annual statement, and that the petitioners (who are stockholders), at a stockholder's meeting were, by resolution, refused an opportunity to inspect the books, the chancellor, under *Rev. p. 186, § 50*, ordered that the books of account of the company, which books were kept outside of the state, be brought into the state, and that the petitioners should be allowed a reasonable specified time to examine them after they should have been so brought in.

---

Petition for order that the books of the company be brought into this state &c.

*Mr. J. B. Vredenburgh* and *Mr. B. Gummere*, for petitioners.

*Mr. S. H. Grey*, for respondents.

THE CHANCELLOR.

This is an application by petition for an order that the books of the Cragin Cattle Co., which, it is alleged in the petition, are kept out of this state, and in the city of Philadelphia, in Pennsylvania, be brought into this state. The company is a corporation created under the general law. The application is made

under the fiftieth section of the act " concerning corporations," (*Rev. p. 186*), which provides that in all cases where it is not otherwise provided by law, the meeting of the stockholders of all corporations of this state shall be held at the principal office or place of business of the company in this state; that the directors may hold their meetings and have an office and keep the books of the company (except the stock and transfer-books) outside of this state if the by-laws so provide; provided, however, that the company shall always maintain a principal office or place of business in this state and have an agent of the company in charge thereof, wherein shall be kept the stock and transfer-books of the company for the inspection of all who are authorized to see the same and for the transfer of stock; and provided, further, that the chancellor or the supreme court, or any justice thereof, may, upon proper cause shown, summarily order that any or all of the books of the company be forthwith brought within this state and kept therein at such place as may be designated, for such time as such chancellor, court or judge may deem proper, and that, upon failure of any company to comply with such order, its charter may be declared forfeited by the chancellor or the supreme court, and it shall therefrom cease to be a corporation, and all the directors and officers of the company shall be liable to be punished as for contempt of court for disobedience of such order. The amount of the capital stock of the company is $300,-000, divided into three hundred shares of the par value of $1,000 each. Of those shares the petitioner Mrs. Huylar owns sixty, Mr. Huylar, five and Mr. Ridder, two—sixty-seven in all—for which they paid (including premium) $85,500 in cash. The grounds of the application are that the officers of the company refuse to permit the petitioners to inspect those of the books which are out of the state. The petitioners state that the value of the capital stock has greatly declined, and that a still further depreciation is threatened; that since the petitioners bought their stock the company has expended large sums of money, amounting to at least $64,000, in the purchase of a certain ranch in the Indian Territory, and in the purchase of cattle and other property necessary to its business, and that after it acquired that

ranch and had put its cattle upon it, the president of the com-
pany put upon it about twelve hundred head of cattle, the larger
part of which belonged to himself and none of them to the com-
pany ; that the facts concerning the number of cattle put there
by the president cannot be ascertained except from an inspection
of the books of the company ; that the petitioners have reason.
to believe that the books will show that more cattle have been
purchased by the company than have been accounted for by the
officers, except by a general statement as to the death of cattle,
and that, though an inspection of the books has been duly de--
manded by the petitioners, it has been refused by the officers of
the company.

The petition states that on the 6th of October last one of the
petitioners, Mr. Ridder, on behalf of all of them, called at the
office of the company in Philadelphia and demanded of the presi-
dent and treasurer permission to inspect the books at a proper
time, and that those officers refused to permit such inspection of
any of the books except the stock-book, and that on the 10th of
November last, at a meeting of the stockholders held in Camden,.
in this state, at which were present the owners of one hundred
and forty-five shares of stock other than those held by the peti--
tioners, Mr. Ridder, speaking for himself and Mr. and Mrs..
Huylar, asked permission to examine the books, stating that the
president had refused to permit him to do so, and that the peti-
tioners having invested $85,500 in the stock of the company
were desirous of knowing something about its affairs ; that Mr.
Woodman, one of the stockholders, then said that he understood
that Mr. Huylar had vilified the company, and the officers had
determined that he should not see the books without the order
of the court.　　The petition states, also, that although Mr. Huylar
then denied that he had vilified the company, and challenged the
production of any evidence that he had done so, an inspection of
the books was denied by a formal vote.　　The petition alleges,.
also, that by the by-laws no one can dispose of his or her stock
to any one not already a stockholder of the company, without the
consent of the board of directors.　　It further states that no finan-
cial report other than a mere statement of receipts and expendi-

tures has ever been made to the stockholders, and that the peti-
tioners believe that it is the intention of the president and his
confederates to so operate the company as to compel the peti-
tioners to sell their stock to them at a great loss.    The respond-
ents, who are the company, and Charles I. Cragin, president,
and Thomas J. Curtis, treasurer, by their answer admit that the
petitioners are the owners of stock as alleged in the petition, and
that the books, except the stock-ledger and transfer-book, have
been and are kept in Philadelphia, in pursuance of a provision of
the by-laws, although the principal office of the company is in
Camden, and that they are in the possession of the officers in the
former place.    It admits that the value of the capital stock has
greatly declined, but alleges that the decline is entirely due to
the losses sustained by the death of cattle from the severity of
the last winter.    It admits that the cattle of the president have
been pastured upon the ranch, as stated in the petition, and al-
leges that that matter was a legitimate transaction, and that the
books contain a true account of it, and that they contain a true
account of the company's cattle and the disposition thereof, and
the losses sustained by the death thereof.    It denies that the peti-
tioner Ridder demanded an inspection of the books on the 6th
of October last, and it was refused, but alleges that what he de-
manded was an opportunity to copy and transcribe the books,
and that that was denied.    While it states that at the meeting
of the stockholders mentioned in the petition, Mr. Ridder stated
that the petitioners had been prevented from inspecting and
making transcripts from the books, it does not deny that at the
meeting it was voted, as stated in the petition, that the petition-
ers should be denied an inspection of the books.    It should be
stated that Mr. Woodman, in his affidavit annexed to the an-
swer, denies that he said that Mr. Huyler should not see the
books without the order of the court, and he denies, also, that he
said anything to that effect, and says that he heard no other
stockholder say so.    By the answer the respondents insist, as
did their counsel upon the argument, that the petitioners have
no right to an inspection of the books except when it may be
necessary in a pending suit to which they may be parties, or in

reference to some pending specific dispute or question in which they may be interested.

The respondents' counsel argues that the chancellor has no jurisdiction to make the order for which application is made. The ground of the objection is that the statute which gives to the chancellor or the supreme court, or any justice thereof, the power to make such order, declares that in case of non-compliance by the company with the order, the chancellor or supreme court may declare the charter forfeited, and that from the time of such declaration the company shall cease to be a corporation; and it is urged that the legislature has not itself the power to declare such forfeiture of·vested rights of franchise acquired under such charters as are held to be contracts between the legislature and the company; and that if it has such power it cannot delegate it, but must exercise it itself. The company was incorporated January 27th, 1883, under the act "concerning corporations," which provides, among other things, that the charter of every corporation which shall thereafter be granted by or created under any of the acts of the legislature shall ·be subject to alteration, suspension and repeal, in the discretion of the legislature. *Rev. p. 178 § 6.* That provision is applicable to and part of the charter of this company. And the company (it was incorporated after the passage of the fiftieth section of the act) took its charter subject to the provisions of that section. *Morris and Essex R. R. Co.* v. *Commrs. of R. R. Taxation, 8 Vr. 228.* It is, therefore, as if there were a provision in the charter of the company that if the chancellor or the supreme court, or any justice thereof, shall order it to bring its books into the state and it shall fail to comply, the chancellor or the supreme court may declare its charter forfeited, and it shall therefrom cease to be a corporation.

It is a very clear proposition that the legislature has the power to confer upon a court authority to declare a charter forfeited for a specified misfeasance or malfeasance. The act gives authority to the chancellor or supreme court, or any justice thereof, upon proper cause shown, summarily to order that the .books be brought into the state. The respondents' counsel insists that the provision gives no authority to order that an inspection be per-

mitted, and is merely intended to secure the production of the
books to answer state purposes—taxation, for example—and was
not designed to furnish any remedy for any private individual,
whether stockholder or creditor.   The act manifestly was in-
tended to secure to stockholders and others interested the means
of compelling a domestic corporation to bring its books into this
state to answer any legitimate purpose which would be defeated
by the keeping of the books out of the state, or to promote any
lawful object in the pursuit of which the persons interested may
be unduly 'embarrassed or prejudiced by such keeping of the
books out of this jurisdiction.   It was intended to secure private
rights, but it may serve public purposes also.   The statute under
consideration is a highly remedial one, and should be construed
liberally.   The fact that it is of a penal character will not forbid
such construction.   *Sickles* v. *Sharp, 13 Johns. 497 ;   Cotheal* v.
*Brouwer, 5 N. Y. 562*.   The act of 1849 provided that all com-
panies incorporated under the laws of this state whose charters
did not designate their places of meeting, should hold their busi-
ness meetings and the meetings of their directors, and should
keep their office and books, in this state, provided that the act
should not apply to any corporations whose charters were not
subject by the terms thereof to be altered, modified or repealed,
or to any incorporated steamboat companies, or to any ferry com-
pany on the waters between this state and either of the adjoining
states.   *P. L. of 1849 p. 215*.

The fiftieth section of the act concerning corporations is
amendatory of that act, and it provides that where it is not
otherwise provided by law, the meetings of the stockholders of
all corporations shall be held at the principal office or place of
business of the company in this state ; that the directors may
hold their meetings and have an office and keep the books (ex-
cept the stock and transfer-books) outside of this state, if the by-
laws of the company so provide.   But the company is in such
case required to maintain a principal office or place of business in
this state and have an agent in charge thereof, in which place
shall be kept the stock and transfer-books for the inspection of
all who are authorized to see them, and for the transfer of the

.stock. The section then provides for ordering that the other books be brought into the state if there be occasion for such .order. The object of this latter provision was to secure the production in this state, as occasion might require, of the books which that section gave the company authority to keep outside .of the state; that is, to prevent injury to all persons interested from the permission given to keep the books outside of the state.

The order is to fix the place and length of time at and for which the books are to be kept here. The latter must be governed by the object for which the books are to be produced. In this case the complaint is that persons entitled to an inspection are denied that right. The fact being established that the right is denied, the question remains whether that constitutes proper cause within the meaning of the section for ordering that the books be brought into this state. Stockholders are entitled to inspect the books of the company for proper purposes at proper times. *Field on Corp.* § *118; Cockburn* v. *Union Bank, 13 La. Ann. 289; Ang. & Ames on Corp.* § *681; People* v. *Throop, 12 Wend. 183; Rosenfeld* v. *Einstein, 17 Vr. 479.* And they are entitled to such inspection, though their only object is to ascertain whether their affairs have been properly conducted by the directors or managers. Such a right is necessary to their protection. To say that they have the right, but that it .can be enforced only when they have ascertained, in some way without the books, that their affairs have been mismanaged, or .that their interests are in danger, is practically to deny the right in the majority of cases. Oftentimes frauds are discoverable only by examination of the books by an expert accountant. The books are not the private property of the directors or managers, .but are the records of their transactions as trustees for the stockholders. In *Union Bank* v. *Knapp, 3 Pick. 96*, it was held that .a bank is bound to produce its books for the inspection of a depositor upon proper occasions, and that the officers of the bank having charge of them are, so far, the agents of both parties. If, under the permission given by the fiftieth section, a domestic corporation should keep its books in a distant state or territory (in this case the company might keep its books on its ranch in

Huylar *v.* Cragin Cattle Co.

the Indian Territory), and should deny its stockholders the right to inspect them there, it is a proper cause for ordering that the books be brought into this state, in order that the stockholders may inspect them. In this case there has been a deliberate denial of the right of stockholders, who are the owners of sixty-seven out of the three hundred shares of the stock, of the par value of $67,000, and for which they paid $85,500, to inspect the books, and the only reason given is the allegation that one of them, Mr. Huylar, who is the owner of five shares, has vilified the company and its officers. It is admitted that the capital stock has greatly depreciated within a comparatively short time. The property of the company has been used by the president for a long time for pasturing a large number of his own cattle, and no account of the matter is contained in the annual statement. It appears, by that statement, that five shares of the stock, of the par value of $5,000, have been sold on credit, for which nothing has been received, and it does not appear, from the statement, that there is any security or obligation therefor. The petitioner's request for an opportunity to inspect the books was not unreasonable, and ought to have been granted.

The refusal is, under the circumstances, proper cause for ordering that the books be brought into this state, in order that the petitioners may have an opportunity of inspecting them here. The section gives power to order that the applicant for the order be permitted to inspect the books after they shall have been brought into this state—not, indeed, expressly, but by implication. The books are to be brought into the state to answer a purpose, and the legislature intended to give power to effectuate that purpose. The first proviso of the section is expressly intended to secure a right of inspection of certain books which are kept in this state, and the other is intended to secure the same right, upon occasion, as to the books which the company may lawfully keep out of the state.

I will order that the books be brought to the principal office of the company, in Camden, within one day from the date of the order, and kept there for ten days consecutively, and that the petitioners have an opportunity to examine them there during proper hours of each day.