WOODWORTH *v.* OLD SECOND NATIONAL BANK.

SAME *v.* MALTBY CEDAR CO.

1. CORPORATIONS— STOCKHOLDER'S RIGHTS — CORPORATE RECORDS
—INSPECTION.

   In the absence of any statutory provision, a stockholder has a
   common-law right in a proper case and for a proper purpose
   to inspect corporate records and documents.[1]

2. BANKS AND BANKING —. NATIONAL BANKS — STOCKHOLDER'S
RIGHTS—ENFORCEMENT—JURISDICTION OF STATE COURTS.

   The State courts have jurisdiction to compel the officers of
   national banks to allow stockholders to inspect the banks'
   records and documents in a proper case and for a proper pur-
   pose.

3. SAME—DEMAND—SUFFICIENCY.

   A demand by a stockholder of a bank upon its officers, made at
   the bank at the close of business on a business day, after due
   notice, that he, together with his attorney, experts, stenogra-
   phers, and clerks, be permitted to examine the bank's records
   and documents, to commence at that time and to continue
   thereafter at such hours of the day and evening as would not
   interfere with the proper conduct and operation of the busi-
   ness of the bank, was made at a proper time and place.

4. SAME—PROPRIETY OF EXAMINATION.

   The purpose to secure evidence against persons whom he had
   sued for false representations resulting in the sale to him of
   stock in the bank at a price in excess of its true value was a
   legitimate and proper one.

5. CORPORATIONS— STOCKHOLDER'S RIGHTS — CORPORATE RECORDS
—INSPECTION.

   Where a corporation was a mere instrumentality of a bank,
   organized for the purpose of managing and realizing upon
   certain property taken by the bank to liquidate an indebted-
   ness, the stock of which was all held by the bank, except suf-
   ficient shares to enable stockholders of the bank to qualify as
   directors, of whom relator was one, none of whom paid any-
   thing for their stock, nor held it otherwise than as trustees

[1]As to right of stockholder to inspect books of company, see note
to *Weihenmayer* v. *Bitner* (Md.), 45 L. R. A. 446.

for the bank, the claim that relator was not a stockholder, and for that reason not entitled to inspect the books and documents of the corporation, was untenable.

6. SAME—GROUNDS FOR EXAMINATION.

The fact that pending his application for mandamus to compel permission to inspect records and documents to enable relator to prepare for trial of a case pending in the State court he discontinued in the State court and commenced again in the Federal court having jurisdiction does not affect his right to the remedy, the reason remaining.

7. SAME—COURT RULES.

Circuit Court Rules 50-57, relating to the discovery of books and papers, apply to pending litigation where discovery is sought by one of the parties against the opposite party, and were not intended to affect the common-law right to an inspection of corporate records in other cases.

ON MOTION FOR RETAXATION OF COSTS.

1. COSTS—CONSOLIDATED CAUSES.

Where separate petitions in mandamus were filed against a bank and a corporation which was a mere instrumentality of the bank, and on removal to this court by certiorari the cases were consolidated and heard here as one, a reversal with costs against the bank, but without costs as against the corporation, authorized taxing the entire expense of taking and printing testimony, though it related to both cases.

2. SAME—ATTORNEY'S FEE.

The order allowing costs of both courts authorized taxing a reasonable attorney's fee in the circuit court, and a fee equivalent to that allowed in the circuit on the judgment appealed from was not unreasonable.

Certiorari to Saginaw; Gage (William G.), J. Submitted July 1, 1908. (Calendar Nos. 22,907, 22,908.) Decided October 5, 1908. Motion for retaxation of costs submitted November 17, 1908; denied November 30, 1908.

Mandamus by Frank T. Woodworth to compel the Old Second National Bank of Bay City and others, and the Maltby Cedar Company and others, to allow relator to inspect certain books, records, and documents. There

were orders denying the writs, and relator brings certiorari. Reversed, and writs granted.

*Gillett & Clark* and *John C. Weadock*, for relator.

*Stoddard & McMillan*, for respondents.

Blair, J. On the 4th day of August, 1905, relator commenced an action in the circuit court for the county of Bay against Joseph W. McGraw and Frank P. Chesbrough, as defendants, to recover damages alleged to have been suffered by reason of certain false and fraudulent representations made by the said McGraw and Chesbrough, as directors of the old Second National Bank of Bay City, in reliance upon which false representations plaintiff was induced to purchase 155 shares of the capital stock of said bank at a price largely in excess of its true value. Except for the fact that the cases concern purchases of stock made at different times, the cause of action in said case was of precisely the same nature as in the case of *Smalley* v. *McGraw*, 148 Mich. 384, 395. A reference to the latter case will supply such further information as may be necessary to an understanding of the cause of action.

Before relator's action was tried, and in consequence of the decision in *Yates* v. *Jones Nat. Bank*, 206 U. S. 158, by the Federal Supreme Court, referred to in the opinion in *Smalley* v. *McGraw* on a rehearing in this court, relator discontinued his said action, and began a similar action in the Federal court at Bay City, based on the Federal statute. While the action was pending in the State court against respondents Chesbrough and McGraw, relator requested permission to inspect the books, papers, and documents of the bank for the principal purpose of enabling him to prepare for the trial of his case, and on February 1, 1906, he served upon the directors of the bank a written notice and demand for such examination, stating that he would renew the demand in person on February 5, 1906, at 3 o'clock in the afternoon, at the

banking office of the bank, and that inspection was desired to commence at that time and to continue thereafter at such hours of the day and evening as would not interfere with the proper conduct and operation of the business of the bank. At the time mentioned in the notice, relator and his attorney renewed the demand in person at the banking office of the bank, where inspection was refused, the cashier informing relator and his attorney that he was acting under the authority of a resolution of the board of directors, which resolution was as follows:

"Resolved, that it is the sense of this board that a compliance with the demand of Mr. Woodworth above referred to [referring to said demand above mentioned] would be detrimental to the interests of the bank, and would involve a large amount of work and resulting expense, and several weeks' time, and would seriously interfere with the transaction of the regular and routine business of the bank, and jeopardize the interests of the bank and its stockholders, and should not therefore be complied with."

The reasons stated in the written notice in the bank case as to the purpose of the examination were:

"To ascertain the true financial condition of the bank and the true value of its assets and of its capital stock, also to ascertain the amount, nature, and date of the losses suffered by the bank through its dealings with Alvin Maltby, Alzina Maltby, Maltby Lumber Company, Maltby Cedar Company, and W. I. Brotherton & Co., for the year 1896 to the year 1906, both inclusive; * * * also to enable me to investigate the existence, location, and contents of certain documents named below, which will be essential as primary evidence of their contents in the prosecution of an action now pending in the circuit court of Bay county in which I am plaintiff and Joseph W. McGraw and Frank P. Chesbrough are defendants, in order to enable me to prove the facts charged by me against the defendants in that action," etc.

The notice further contained, in 23 separate paragraphs, what was alleged to be "a specific list of certain of the books, records, and documents of which inspection is desired."

After the refusal of the bank officers to permit an inspection, relator filed his petition in the circuit court for a writ of mandamus to require such inspection. The 14th and 15th paragraphs of the petition allege that, after the refusal of inspection,

"Your petitioner, through his attorney, then and there requested said Andrews to permit said petitioner to examine some portions of the books, papers, and documents mentioned in petitioner's written request and inquired if the refusal to permit such examination applied to all the books, papers, and documents mentioned or only to a portion of them; that thereupon the said Andrews informed your petitioner that such refusal applied to all of the documents so mentioned, and that the reason given by the bank and the board of directors thereof and by said Andrews for making such refusal was that such examination would not be for the best interests of the bank or its stockholders; that after such refusal, and on the 6th day of February, 1906, your petitioner's attorney was informed by the said Andrews that such refusal did not apply to a certain record of the stockholders of said bank purporting to show the names and residence of the said stockholders and the numbers and dates of the certificates of stock issued to them; and that thereafter, on the 6th day of February, 1906, the said Andrews permitted your petitioner's attorney to inspect such record but that he then and there refused as before to permit your petitioner or his attorney to inspect any other of the books, papers, documents, or records of the bank of which inspection was desired by your petitioner."

These allegations of the petition were admitted by respondents to be true in their answer. Upon the hearing the circuit judge denied the writ upon the grounds, as stated in the bank case:

"(1) It is apparent that the real purpose of the relator in applying for an inspection is to aid him in his litigation against McGraw and Chesbrough and not to enable him to ascertain the value of his stock in the bank. He would not be entitled to the writ for the mere purpose of ascertaining the value of his stock, for there is no showing of any mismanagement of the bank since he acquired his interest, nor is there any showing that he has not now all

the information necessary for that purpose which could be derived from an inspection of the books and papers of the bank.

"(2) He does not point out by his petition nor show by the evidence which of the books and papers of the bank it is necessary for him to examine to enable him to prepare for the trial of his suit.

"(3) He seeks an examination and copies by himself and his attorney, accountant, and stenographer of all of the books and papers of the bank.   *   *   *   The relator owns but 77½ shares of 1,000 shares of this bank stock, and I am of the opinion that such an exhaustive examination of all of its books and papers as asked by his petition might result in grave consequences to the bank.   If this be probable, then certainly the interests of the very large majority of the stockholders should not be jeopardized to promote the interest of relator."

The facts in the second case submitted herewith (*Woodworth* v. *Maltby Cedar Co.*) are very similar to those in the bank case.   The Maltby Cedar Company was a corporation formed in the interests of the bank.   The directors of the bank, having taken over the property of the Maltby Lumber Company as security for or part payment of its indebtedness to the bank, organized the Maltby Cedar Company for the purpose of managing and realizing upon this property and closing up the business of the Maltby Lumber Company to the best advantage.   Mr. Andrews, cashier of the bank, holds, as trustee for the bank, more than 99 per cent. of the stock of the Cedar Company, and the other shares are distributed among the stockholders and directors of the bank and held in its interest, except one share, which is held by Mr. Maltby. Mr. Lewis, the secretary and treasurer of the Cedar Company, who was in possession and control of the office, is an accountant employed and placed in the office of the Maltby Lumber Company at the request of the bank before the organization of the Cedar Company.   One share of stock stood upon the stock book in the relator's name, but the same was never delivered to him nor removed from the books.   On February 27, 1905, relator was

elected a director to fill the vacancy occasioned by the resignation of Joseph W. McGraw, and was also elected president by the other directors, after which time, until his resignation, relator acted as such director and president. Neither relator nor any of the stockholders and directors of the Maltby Cedar Company paid any value for their stock in the Cedar Company, and in acting therefor they were acting as trustees for the bank. Among the reasons given by the circuit judge for denying the writ against the Maltby Cedar Company was:

"Such an inspection is now provided for under Circuit Court Rules 50–57 (124 Mich. xxxviii). It will not be ordered when the books and papers can be obtained on the trial by subpœna duces tecum. * * * What interest has relator as a stockholder in the Maltby Cedar Company? One share was written in his name to enable him to act as director and president when he was active in the Old Second National Bank. He paid nothing for it. It was never delivered to him. He appears to have no greater interest in this company than any other stockholder of the bank and never had a share filled out in his name. Certainly the writ should not issue at the behest of such a person."

For this, as well as the reasons set forth in the bank case, the circuit judge concluded that it was his duty to deny the writ. Issues of fact were framed and considerable testimony was taken bearing thereon, but we do not deem it necessary to refer particularly to such testimony. Exhaustive printed briefs have been filed by both parties, which have materially lightened the labors of the court in considering the facts involved and the questions of law applicable thereto.

We are inclined to agree with the circuit judge that it is apparent that the real purpose of the application is to aid the relator in preparing for the trial of his case against McGraw and Chesbrough, and we dispose of the case upon that theory.

It is well settled that, in the absence of any statutory

provision, a stockholder in a corporation has a common-law right, in a proper case and for a proper purpose, to in-. spect corporate records and documents. *People* v. *Walker*, 9 Mich. 328; *Guthrie* v. *Harkness*, 199 U. S. 148; *In re Steinway*, 159 N. Y. 250 (45 L. R. A. 461). In *People* v. *Walker*, supra, it was said in the prevailing opinion that the writ would not be granted to enable a corporator to "gratify idle curiosity. The principle seems to be, and very properly, too, that the party asking the writ must have some interest at stake which renders the inspection necessary." In *Guthrie* v. *Harkness*, supra, the jurisdiction of the State courts to entertain applications of this nature against national banks was sustained. Numerous cases are cited, and, among others, the case of *Huylar* v. *Cragin Cattle Co.*, 40 N. J. Eq. 392, 398. The court quote from the latter case, as follows:

"Stockholders are entitled to inspect the books of the company for proper purposes at proper times. *  *  * And they are entitled to such inspection, though their only object is to ascertain whether their affairs have been properly conducted by the directors or managers. Such a right is necessary to their protection. To say that they have the right, but that it can be enforced only when they have ascertained, in some way without the books, that their affairs have been mismanaged, or that their interests are in danger, is practically to deny the right in the majority of cases. Oftentimes frauds are discoverable only by examination of the books by an expert accountant. The books are not the private property of the directors or managers, but are the records of their transactions as trustees for the stockholders."

It is further said:

"It does not follow that the court will compel the inspection of the bank's books under all circumstances. In issuing the writ of mandamus, the court will exercise a sound discretion, and grant the right under proper safeguards to protect the interests of all concerned. The writ should not be granted for speculative purposes, or to gratify idle curiosity or to aid a blackmailer, but it may not be denied to the stockholder who seeks the information

for legitimate purposes.  *In re Steinway*, 159 N. Y. 250 (45 L. R. A. 461); 4 Thompson on Corporations, § 4412 et seq."

It is clear that the relator made his demand at a proper time and place.  We think it is equally clear that the purpose of the demand was a legitimate and proper one. In the case of *Richardson* v. *Swift*, 7 Houst. (Del.) 137, an application was made by David M. Richardson, as relator, a resident of Michigan and a stockholder in the Diamond Match Company, a corporation of Connecticut owning property in the State of Delaware, for a mandamus to compel said Swift, a resident of Delaware and president of the company, who had possession of certain books and papers belonging to the company, to allow relator to make copies thereof.  These copies were wanted by Richardson for use in certain legal proceedings in the State of Michigan brought by him against Christian H. Buhl and Russell A. Alger, of Detroit, to restrain them from selling certain stock of the Diamond Match Company which he claimed.  The court held that the relator was entitled to the writ.

In *Re Steinway*, supra, the court quote from *Rex* v. *Fraternity of Hostmen*, 2 Strange, 1223, as follows:

"In *Rex* v. *Fraternity of Hostmen* the reporter states that the court said:

"'Every member of the corporation had, as such, a right to look into the books for any matter that concerned himself, though it was in a dispute with others.'"

In 10 Cyc. p. 957, it is said:

"The English doctrine seems to be that, in the absence of a statute or other instrument conferring the right, a shareholder has no right to an inspection of the corporate books for the purpose of acquiring a knowledge of facts upon which to create a dispute, but that there must be a defined and distinct dispute already in existence with reference to which the right of inspection is demanded. This does not necessarily mean that a suit should have been instituted, but it is sufficient if there is an existing dispute to be settled by reference to the books.  There is

neither sense nor justice in this restriction, since every proprietor has the right to know the manner in which his agents are conducting his business."

See, also, 2 Cook on Corporations (5th Ed.), §§ 513, 515, 519; 3 Wigmore on Evidence, § 1858, par. 2. We are of the opinion, therefore, that the purpose of the inspection was a legitimate and proper purpose. We are also of the opinion that the demand, in the light of the pleadings, was sufficient to warrant the granting of the writ. Many of the books and papers specified by relator in the notice were sufficiently designated, and the refusal to permit examination was not based upon the ground that the notice was not sufficiently specific, but upon a different ground —on the ground of inconvenience to the bank. In *Ellsworth* v. *Dorwart*, 95 Iowa, 108, the court said:

"It is said in appellee's argument that plaintiff requested and prayed for more than he was entitled to, and that they and the court were justified in denying him the right to examine any of the books. We do not think this is the rule. It was the duty of the officer, upon request, to exhibit to plaintiff such books as he was entitled to, although he called for more than he could rightfully demand; and the court was not justified in refusing him all relief because he asked for more than he was entitled to."

The point that relator was not a stockholder in the Maltby Cedar Company, and, therefore, not entitled to an inspection of its records, is not well taken. The Maltby Cedar Company was a mere instrumentality of the bank itself, in which all of the stockholders of the bank had at least an equitable interest, and the directors of the bank having made relator a stockholder, director, and president of this corporation, and he having the same interest in it that any of them had, and none of them having paid value for their stock, they do not now stand in position to deny his rights as a stockholder of that corporation. *Clark* v. *Machine Co.*, 151 Mich. 416. The fact that relator has discontinued his suit against Chesbrough and McGraw in the Bay circuit and recommenced it in the Federal court

does not affect his right to the writ. The reason for the writ remains precisely the same as before.

We are also of the opinion that Circuit Court Rules 50–57 (124 Mich. xxxviii) have no application to this case. Those rules apply to pending litigation where discovery is sought by one of the parties against the opposite party, and were not intended to affect the common-law right to an inspection of corporate records in other cases.

We are therefore of the opinion that relator is entitled to the writ permitting an inspection by himself, his attorneys, and necessary experts, of such books, papers, records, and documents of the bank and Cedar Company as are material to his cause of action in the Federal court, such inspection to be had at such place and times and in such manner as will least inconvenience the business of the bank, and under the surveillance of such officer or person as the bank may designate, and at the expense of relator. If the parties are unable to agree as to the course of the examination or the subject-matter thereof, a further application may be made to this court.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.

### ON MOTION FOR RETAXATION OF COSTS.

PER CURIAM. Relator filed two separate petitions for the writ of mandamus to enforce his right as a stockholder to inspect the books of the above-named bank and of the Maltby Cedar Company. The circuit court denied both petitions. The orders of the circuit court were reversed in this court upon certiorari. *Ante*, 459. Relator applied for full costs in both cases. Respondents objected, for the following reason, among others, viz.:

"We further call attention to the fact that these two cases were heard in this court and the court below as one case, and the testimony was taken in the same manner. For this reason, also, we think that full costs should not be granted in both cases."

An order was entered in the *Bank Case:*

"That the relator recover of and from the respondents his costs of both courts, to be taxed."

In the *Maltby Cedar Co. Case* the order as to costs was:

"No costs will be awarded either party in this cause."

In taxing the costs the clerk of this court allowed, among others, the following items: Printing brief, $57.60; printing reply brief, $3.60; paid commissioner for taking testimony, $122.55; clerk of Federal court for certified copy of declaration, $8; attorney fee, as allowed by circuit court on taxation of costs by respondents, $30. Respondents objected to the allowance of these items and others, and have appealed from the taxation thereof.

The basis of the objection to the items for printing and taking testimony is that such items relate to both cases, should be apportioned between them, and only that portion of such expense incurred in the *Bank Case* taxed. As we held in the opinion above referred to, the Maltby Cedar Company was a mere instrumentality of the bank, and any costs allowed against the Cedar Company would be paid by the bank. In entering the order, respondents' theory was adopted that the two cases were really consolidated into one case, and the costs were properly taxed upon that theory. The relator was entitled, under the order giving him costs in both courts, to a reasonable attorney fee in the circuit court. Inasmuch as the circuit judge allowed respondents an attorney fee of $30 in each case, we do not think they can complain that the fee allowed is unreasonable. The $8 for certified copy was necessary to show the status of the case in the Federal court, and the continued necessity for an examination of the books, and was properly allowed. There are no other objections which require discussion.

The motion for retaxation is denied.