**SPRAGUE et al. v. TICONIC NAT. BANK OF WATERVILLE, ME., et al.**

District Court, D. Maine, S. D.

May 29, 1936.

Harvey D. Eaton, of Waterville, Me., for plaintiff.

F. Harold Dubord, of Waterville, Me., for defendants.

PETERS, District Judge.

This is a bill in equity brought to establish a priority claim on certain bonds or the proceeds thereof in the hands of the defendant Picher, as receiver of the defendant Peoples-Ticonic National Bank.

I find the following facts:

In March, 1931, the plaintiff Lottie F. Sprague deposited with the Ticonic National Bank of Waterville about $5,000 in trust to be invested by the bank as trustee and used for the purpose of making certain periodical payments to the other plaintiff, Margaret Davis Sprague. The bank had been authorized to act in a fiduciary capacity under the provisions of the Federal Reserve Act (38 Stat. 251), and had, by proper votes, set up a trust department with adequate provisions for the protection of trust funds, including the provision that trust funds held by the bank awaiting investment or distribution, deposited in the commercial department of the bank to the credit of the trust department, should be secured by securities equal in value to the amount of such deposited funds and delivered to the trust department to be held segregated from the general assets of the bank.

The bank accepted the Sprague trust, the terms of which were evidenced by a written memorandum, and deposited the money in its commercial or checking department to the credit of its trust department, with other funds awaiting investment or distribution, and secured the total amount of such funds by setting aside in the trust department bonds equal to or exceeding in value the amount of such total deposit, as provided by the by-laws of the bank and by the Federal Reserve Act. Included among the bonds thus segregated was a certain lot of $20,000. Kingdom of Denmark 6s, 1942.

In August, 1931, the Ticonic Bank discontinued its activities as an active banking concern, sold substantially all of its assets to the Peoples National Bank, and went into voluntary liquidation. The Peoples Bank agreed to assume and pay the liabilities of the Ticonic Bank to its depositors, but it does not appear that the Peoples Bank succeeded the old bank as trustee or expressly undertook any obligation relative to the administration of its trusts. On the contrary, the old Ticonic Bank continued, through its officers, to exercise supervision over the trust accounts, including the Sprague account.

The total uninvested trust funds on deposit in the commercial department of the Ticonic Bank, when taken over by the Peoples Bank, amounted to about $10,000, and when the banks closed in 1933 to about $12,000. The sale to the Peoples Bank included the Ticonic banking house, furniture, and equipment, and the new bank, taking the

name of Peoples-Ticonic, occupied the quarters of the old Ticonic.

In 1931, prior to the acceptance of the Sprague trust by the Ticonic Bank, Mr. Charles W. Vigue, who was president and remained president of the Peoples Bank, was chosen president of the Ticonic and assumed active control and management of its affairs. Several other gentlemen were and remained directors of both banks, both of which were practically controlled by one stock ownership.

The deposit in the Ticonic Bank to the credit of its trust department, after the sale to the Peoples Bank, was carried in the same way as before, even the same ledger sheets being used, it being impossible to distinguish, except by dates, the old account from the new.

The officers of the old Ticonic Bank, in handling this account of uninvested trust funds, continued to make deposits and draw checks as before. The checks, until the close of the banks in 1933, were even drawn on the Ticonic Bank by its trust officers and by Mr. Vigue, its president and trust officer, although the bank had gone out of business; but the checks were presented to and paid by the new bank in the old banking rooms. The Sprague account, which was never invested in any way by the Ticonic Bank as trustee, was thus finally drawn down to $3,649.65, which is the amount of the trust fund that should be in the hands of the trustee.

The Kingdom of Denmark bonds, which had been segregated by the Ticonic Bank to secure the uninvested trust funds on deposit in its commercial department to the credit of its trust department, were included in the sale of assets by the Ticonic to the Peoples Bank, delivered to and taken over by the latter bank. They were then treated by the new bank as its own property, segregated to secure its own trust funds as distinguished from the trust funds of the old bank, and subsequently sold by the receiver.

As both banks had the same active president, who also participated as trust officer in the handling of the trust funds of the Ticonic Bank, both before and after the quasi consolidation, the officers of the Peoples-Ticonic Bank, which I have referred to as the new bank, had full knowledge of the situation concerning the trust funds of the old bank and the fact that the uninvested funds when turned over to the new bank were secured by these Kingdom of Denmark bonds.

Subsequent to the closing of the banks in 1933, the defendant Picher was appointed receiver of both banks.

Under the trust agreement with the plaintiffs, the Ticonic Bank, as trustee was authorized to reserve $1,000 from invested funds and to deposit that amount in the savings department of the bank; but no such deposit was made, nor was any of the Sprague money ever invested, either by deposit under the safeguards of the savings department or otherwise, but always remained among the uninvested trust funds.

In behalf of the defendants, it is claimed that the deposit in the commercial or checking departments, first, of the Ticonic and later of the Peoples-Ticonic, when that bank succeeded to the business of the Ticonic, simply represented the obligation of debtor and creditor, and that the only rights of the persons interested in the deposit are to share in a distribution of general assets by the receiver; that the plaintiffs and others interested in the deposit are not entitled to a lien on the Denmark bonds or their proceeds, it being contended that while those bonds were segregated by the Ticonic for the purpose of securing uninvested funds, that the funds in question were not uninvested but were invested by depositing them in the commercial account of the Peoples-Ticonic Bank.

It is also contended that inasmuch as the trust agreement authorized the reservation of $1,000 from general investments and authorized its deposit in the savings department, that, in any event, $1,000 of the Sprague fund was a general deposit, regardless of the status of the balance.

My conclusions of law are not favorable to the defendants' contention. No doubt the banks, first the Ticonic and then the Peoples-Tonic, were debtors for the amount of balances in the checking accounts of the credit of the trust department of the Ticonic. The owners of those balances had the benefit of the banks' implied promise to pay; but they also, admittedly, had the benefit of the security of the segregated bonds while the deposit was in the Ticonic, and must still have that benefit, unless something has happened since to deprive them of that protection. As nothing has occurred with their consent or participation, it must be claimed, either that the so-called consolidation of the

banks or the fact of receivership has changed their equitable rights.

The sale of these segregated bonds with the assets of the Ticonic to the Peoples, or the Peoples-Ticonic Bank, was not a sale to innocent third parties for value. The status of the bonds with reference to uninvested trust funds was perfectly well known to Mr. Vigue, who was the chief executive officer of both banks and acted as trust officer of the Ticonic. His knowledge affected the new bank as well as the old, and he could not by a mere sale of the bonds in the market divest himself or his bank of responsibility,

Under the situation disclosed, the new bank took and held the trust deposit, with the bonds that had been set aside to secure it as provided by law, subject to the same obligations and with the same status as before.

The argument that when the funds were in the checking department of one bank they were uninvested and that when they turned up in the checking department of another bank they became invested funds, does not impress me. I hold that their status was not changed by the so-called consolidation.

The only other thing that has occurred is the receivership; but the receiver took over the assets of the closed bank subject to all the existing rights and equities. Scott v. Armstrong, 146 U.S. 499, 13 S.Ct. 148, 151, 36 L.Ed. 1059. In the above case the court said:

"It is insisted that the assets of the bank existing at the time of the act of insolvency include all its property, without regard to any existing liens thereon or set-offs thereto. We do not regard this position as tenable. * * * Liens, equities, or rights arising by express agreement, or implied from the nature of the dealings between the parties, or by operation of law, prior to insolvency and not in contemplation thereof, are not invalidated."

Skud v. Tillinghast (C.C.A.) 195 F. 1. In the latter case the Circuit Court of Appeals held that the receiver of a national bank cannot lawfully appropriate to the use of the bank or its creditors any seeming assets that in equity and good conscience belongs to another or ought not to be enforced against him. Wittnebel v. Loughman (D.C.) 9 F.Supp. 465.

I conclude that the plaintiffs, in common with others in the same situation, had an equitable lien on the Denmark bonds while in the possession of the Peoples-Ticonic Bank and while in the possession of its receiver, and, as the proceeds of those bonds sold by the receiver augmented the funds in the hands of the receiver, the same lien extends to the proceeds of the bonds. As the total amount of all trust funds on deposit was less than the proceeds of the bonds sold, the plaintiffs here are entitled to payment in full of $3,649.65, with interest from the date of the bill and with costs.

A decree may be entered accordingly.