## ALTMAN v. McCLINTOCK et al.

District Court, D. Wyoming.  May 21, 1927.

No. 1653.

1. United States ⬨═41—United States officials, in administering duties, are accountable to court only for fraud or errors of law in executing official acts.

Officials of the United States, when engaged in administering the duties of the office to which they are assigned, are accountable to court only in event of fraud or errors of law in matter of the execution of their official acts, and otherwise will not be disturbed by the courts.

2. Banks and banking ⬨═287(3)—Receiver of national bank is not amenable to accounting, unless exceptional situation justifies such relief (12 U. S. C. A. § 198).

Receiver of national bank held an officer of the United States, acting under express direction of the Comptroller of Currency, pursuant to 12 U. S. C. A. § 198, and, although

he may be in a sense a trustee for creditors of defunct bank, he is not amenable to accounting to his cestui que trust, except if situation should arise wherein court would feel justified in granting such relief.

3. Banks and banking ⬨═287(1)—Comptroller of Currency has exclusive authority in matter of necessary expense in administration of receivership for national bank (National Banking Act [12 U. S. C. A.]).

Administration of receivership of a national bank is committed to the Comptroller of Currency by the National Banking Act (12 U. S. C. A.), and he has as much authority in the matter of incurring and authorizing necessary expense as would a court in administering a receivership before it.

4. Discovery ⬨═40—Depositors held not entitled to discovery to determine right of action against officers under petition for accounting as to expenses of receiver of national bank.

Where depositors sued to secure accounting from receiver of national bank, and discovery sought, in nature of examination of books, was for purpose of determining right of action against officers and directors of bank, while accounting sought related to matter of expenses of receivership, a situation is not presented entitling plaintiff to accounting prayed for, since discovery would have little to do with accounting of receiver of own official acts, and in order to warrant relief discovery must be in aid of general relief sought.

5. Discovery ⬨═40—Discovery must be in aid of general relief.

A discovery must be in aid of general relief sought.

In Equity. Suit by Henry Altman against T. E. McClintock, receiver of the First National Bank of Cheyenne, Wyo., and another. Bill dismissed.

Joseph C. O'Mahoney, of Cheyenne, Wyo., for plaintiff.

Thomas Hunter, of Cheyenne, Wyo., for defendants.

KENNEDY, District Judge. This is a suit in equity, in which the plaintiff seeks an accounting and permission to examine the books of an insolvent bank in the hands of one of the defendants. The suit was originally brought against the defendant McClintock as receiver, and the defendant McIntosh, as Comptroller of the Currency of the United States. In a hearing upon a plea to the jurisdiction of the court, the defendant McIntosh was eliminated from the suit by court ruling. The sufficiency of the bill entitling the plaintiff to the relief prayed for was also challenged as to the defendant McClintock by motion to dismiss, and that motion overruled; the reason of the court being set forth in the memorandum of the court under date of June

3, 1926. An answer was then filed, which was met on the part of the plaintiff by a motion to strike, and this motion by another on the part of the defendant that the motion to strike search the record to the first defect. Under this highly technical condition of the lawsuit when the hearing upon the motions was called, it being admitted by counsel that the controlling facts themselves were not in dispute, the court suggested that the matter be submitted upon an agreed statement of facts, which was accordingly done, and the case was then presented, argued, and submitted upon final hearing, in which situation it is now before the court for final disposition.

Inasmuch as the case is now at issue, and the substantive plea and prayer of the plaintiff is to the effect that he is entitled to a decree for an accounting, together with an order permitting him to examine the books of the bank in the defendant's possession, which alleged rights on the part of the defendant are challenged and denied, it may not be necessary to scrutinize the pleadings, for the reason that the legal situation may be ascertained from an examination of the facts. These appear to be substantially as follows:

That the First National Bank is a corporation organized under the laws of the United States; that the plaintiff is a citizen of the state of Wyoming, and that on July 9, 1924, he had on deposit in said bank approximately $75,000, upon which he has filed his proof of claim and the same has been duly allowed; that the plaintiff is the chairman of the depositors' committee of said bank, appointed at a meeting called for the purpose of adopting some plan for liquidation, but that no meeting of the depositors was ever held to authorize this suit; that the defendant McClintock is the duly commissioned, qualified, and acting receiver of said bank, which was found to be insolvent on July 9, 1924, he having been appointed as such by the Comptroller of the Currency on that day; that he gave a bond in the sum of $100,000, conditioned upon his obedience to the instructions of the Comptroller; that as such receiver he is now in possession and in charge of all books and records of said bank, for the purpose of liquidating its assets and winding up its affairs, and that such charge and custody is at all times subject to the directions and control of the Comptroller; that during the month of June 1924, a national bank examiner examined said bank, upon which he found that among the assets of said bank there was a large amount of notes which he·considered unsatisfactory, and which he ordered to be taken out of the affairs of the bank, he believing the bank to be at the time in a precarious condition; that, in order to give the officers and directors of the bank an opportunity to meet his requirements, said examiner left Cheyenne on July 1, 1924, and returned about five days later, being recalled by the officers of the bank; that on July 8th the bank conducted its business in the regular order, but did not reopen on the morning of July 9th, it being temporarily in charge of said examiner until turned over to the defendant receiver; that one Abbott who was president of said bank, was also a member of the board of directors of the Wyoming National Bank of Casper, and that one Brooks, president of said Wyoming National Bank, was a stockholder of said First National Bank; that Brooks was present at a meeting of the officers of said First National Bank on July 1st when the affairs of the First National Bank were considered and discussed; that these banks were correspondent banks and that the credits to the account of the Wyoming National Bank in the First National Bank were reduced from some $273,000 plus on July 1st to some $2,000 plus on July 9th when the bank closed; that some of this reduction in account was caused by telegraphic instructions sent by officers of the First National Bank on July 7th to the Omaha National Bank to transfer $60,000 of its credit on the books of the Federal Reserve Bank of Kansas City to the Wyoming National Bank; that out of this controversy a suit arose in Omaha, in which the defendant receiver here was defendant there, and in which said suit a pleading was filed by counsel in his behalf, which pleading had never been seen by defendant, denying the legitimacy and legality of the transfer of funds aforesaid; that subsequently a compromise between the defendant receiver and the Wyoming National Bank was entered into with the approval of the Comptroller of the Currency, which was subsequently submitted to this court upon the facts and such compromise approved; that in the matter of said compromise the defendant receiver was represented by competent counsel, whose opinion was given that said agreement was an advantageous one for his receivership; that, if it should become material to the determination of this suit, the parties reserved the right to try out the legitimacy and legality of the compromise settlement; that prior to the institution of the suit at bar representations were made to the defendant receiver and the Comptroller of the Currency that circumstances gave good ground for suspicion that the law had been violated and the directors might be personally liable for negligence, and that a formal written demand was made upon

the receiver for the right to examine the books and accounts of the bank, to determine whether or not the receiver should institute suit against the directors of the bank for individual liability for negligence, whether the receiver should not file proceedings to set aside the compromise heretofore referred to, whether illegal preferences were not allowed by officers of the bank after its insolvency was in contemplation, which should be made the basis of proper legal action, and whether, in the event of the refusal or failure of the receiver to initiate such proceedings, the depositors would be warranted in doing so; that this request was denied by the receiver and the Comptroller; that the receiver has not initiated suit against the directors, and has denied the depositors' committee an opportunity to examine the books of the bank; that the defendant receiver, in refusing the request of the plaintiff, has acted under instructions from the Comptroller, which are contained in general instructions issued by said Comptroller for the general guidance of receivers of national banks, among other things those instructions containing the provision that, if requests are made for data to the receiver, they should be referred to the department for proper consideration; that the requests and demands of the plaintiff were so referred to the Comptroller of the Currency, and instructions received by the receiver from the Comptroller to the effect that there would be employed at the expense of the insolvent bank a firm of competent accountants, to investigate the possible civil liability of directors and others, but that said accountants would be selected by the Comptroller and subject to his direction solely; that in the event it should be made to appear to the Comptroller's office that a civil action against the directors or others cannot be prosecuted to a successful conclusion, and in the event the Comptroller decides not to initiate action against them, then such part of the report as may be necessary will be made available to the depositors, in order to enable them to determine whether or not they would be justified in instituting such suit; that, as to the matter of allowing a representative of the depositors to be present during the course of the audit, the receiver was advised by the Comptroller that it was not believed that such representative could aid the accountants, and that for such reason such request should not be granted, but that the accountants would be glad to confer with the representatives of the depositors pertaining to any matters which should be presented to them during such examination; that in order to prevent confusion the audit would be under the direction of the Comptroller; that certain persons, naming them, were officers and directors of the First National Bank at the time of its suspension, and that two of such directors have since died; that on the morning of July 9, 1924, the janitor of the bank building in which the bank was located, at the direction of the cashier of the bank, caused to be removed from the basement of the building a quantity of books and papers and to have them burned on the city dump; that of this transaction the defendant had no knowledge until long afterward, and that the plaintiff has never been advised what books and papers were so destroyed; that during the course of the receivership many claims in favor of the bank have been compromised upon the authority of the Comptroller, all of which compromises, with the conditions surrounding the same, had been submitted to the proper court, but of which compromises the plaintiff or the depositors' committee were given no advance information; that at a meeting of the depositors, held on February 6, 1925, a committee was appointed, of which the plaintiff was one, to make an examination of the assets of the bank; that at a subsequent meeting of the depositors this committee presented a report, wherein it was shown that the committee had examined and checked a list of the assets of the bank, and that said committee had been furnished with a list of the property, both real and personal, securing each loan; that said committee further reported to said depositors' meeting that, if the said bank had any just or reasonable claims or causes of action, it was their opinion that that would be fully protected by the government; that special mention was to be made of the courteous and helpful co-operation which the committee had received in its work from Receiver McClintock, and that it was the belief of the committee that he was fully competent to handle the work intrusted to him; that the examination made by the committee was authorized through a telegram sent by the Comptroller to the receiver, in which it was represented that such examination might take place under the personal supervision of the receiver, but that no memorandum should be taken by the committee, and that they should promise not to divulge information received, and that it would be used only to enable them to form an opinion as to the value; that on June 30, 1924, the officers of the bank made and published the regular quarterly report to the Comptroller of the Currency as required by law, which showed the bank to be solvent, provided that the nominal values of assets proved to be the actual value of the same; that on

December 31, 1925, and December 31, 1926, the defendant receiver published statements showing the uncollected assets in his hands on such dates, and that between these dates the receiver also published similar statements, which statements were all published pursuant to express instructions from the Comptroller, outlining the formal nature of the matter to be shown thereby; that the receiver has never published any other form of financial statement, and has never made any statement or any accounting to the depositors showing anything with respect to the expenses of such receivership; that the defendant receiver has been rendering periodical reports to the Comptroller, showing all his acts and proceedings in connection with the receivership, which reports have been satisfactory to the Comptroller, and has made remittances through the Comptroller to the Secretary of the Treasury of all moneys collected; that dividends of 45 per cent. have been paid on all adjudicated claims, and that the face value of the assets not yet collected amounts to nearly $2,500,000, which the defendant receiver is endeavoring to collect as expeditiously as possible; that on the 20th day of February, 1926, the plaintiff brought the suit at bar against the receiver and the Comptroller of the Currency, and on June 3, 1926, upon the motion of the Comptroller the suit was dismissed as to him; and that all claims of the United States against the bank had been satisfied.

In view of the repeated decisions of the Supreme Court covering a construction of the National Banking Act, it would seem unnecessary to extend the provisions of the act at length in this memorandum. Suffice it to quote one provision which is found in U. S. c. tit. 12, § 192, reading as follows:

"Such receiver, under the direction of the Comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders. Such receiver shall pay over all money so made to the Treasurer of the United States subject to the order of the Comptroller, and also make report to the Comptroller of all his acts and proceedings."

As to the general scope and purpose of the act itself, the Supreme Court has likewise repeatedly spoken. In the case of Farmers' &

M. Nat. Bank v. Dearing, 91 U. S. 29, on page 33 (23 L. Ed. 196), the court says:

"The national banks organized under the act are instruments designed to be used to aid the government in the administration of an important branch of the public service. They are means appropriate to that end. Of the degree of the necessity which existed for creating them Congress is the sole judge."

Again, in the case of Van Reed v. People's National Bank, 198 U. S. 554 on page 557, 25 S. Ct. 775, 776 (49 L. Ed. 1161, 3 Ann. Cas. 1154), that court says:

"National banks are quasi public institutions, and for the purpose for which they are instituted are national in their character, and, within constitutional limits, are subject to the control of Congress and are not to be interfered with by state legislative or judicial action, except so far as the lawmaking power of the government may permit."

Many other decisions to the same effect might be cited, but all going to the general conclusion that the scope of the act which places the general supervision and control of national banks even in liquidation, in the Comptroller of the Currency, is very far-reaching.

As to what the legal status of a receiver of a national bank, appointed by the Comptroller of the Currency, actually is under the Banking Act, has been the burden of the greater portion of the arguments of counsel in this case. It is insisted by counsel for plaintiff that the legal status of the receiver is that of a trustee for creditors of the bank; while counsel for defendant insists that he should be legally regarded in the light of an officer of the United States. I do not know whether or not a decision of the case here depends upon a solution of this point, although it would seem that the theory of counsel for plaintiff is such that, unless it be held that the receiver is in the general position of a trustee for creditors, of which the plaintiff here is one, there would be no right to an accounting, for the reason that it is admitted that the Banking Act in no way provides for such accounting. In this respect, therefore, an examination of the point may be desirable, although it was previously considered by this court upon the motion to dismiss, and, whatever the ruling of the court then, it should not preclude further examination now that the case is being considered upon the merits. Numerous authorities have been cited, an examination of which discloses a differentiation as to facts, and likewise as to the points being considered, out of which have arisen expressions by the court which would seem to give comfort to

counsel on both sides. In the first place, the Banking Act refers to the position of a receiver as one of trust, as in U. S. C. tit. 12, § 198, it speaks of the receiver having qualified and entered "upon the discharge of his trust."

In the case of Scott v. Armstrong, 146 U. S. 499, at page 507, 13 S. Ct. 148, 150 (36 L. Ed. 1059), the Supreme Court uses the following language:

"The receiver took the assets of the Fidelity Bank as a mere trustee for creditors, and not for value and without notice, and, in the absence of statute to the contrary, subject to all claims and defenses that might have been interposed as against the insolvent corporation before the liens of the United States and of the general creditors attached."

In the case of Case v. Terrell, 11 Wall. 199, we find on page 202 (20 L. Ed. 134) the following language:

"But we must suppose that it is claimed on the ground that the receiver and Comptroller, both of whom appeared and answered the bill, represent the United States, and can subject the government to the jurisdiction of the court. As to the receiver, the claim, if any such be made, is not worth serious consideration. He represents the bank, its stockholders, its creditors, and does not in any sense represent the government."

On the other hand, Mr. Justice Brandeis, in a comparatively recent decision, in speaking for the Supreme Court in the case of United States v. Weitzel, 246 U. S. 533, 38 S. Ct. 381, 62 L. Ed. 872, uses the following language in discussing the status of a receiver of a national bank:

"The receiver, unlike a president, director, cashier, or a teller, is an officer, not of the corporation, but of the United States. In re Chetwood, 165 U. S. 443, 458 [17 S. Ct. 385, 41 L. Ed. 782]. As such he gives to the United States a bond for the faithful discharge of his duties; pays to the Treasurer of the United States moneys collected; and makes to the Comptroller reports of his acts and proceedings. Rev. Stats. § 5234 [Comp. St. § 9821]. Being an officer of the United States he is represented in court by the United States attorney for the district, subject to the supervision of the Solicitor of the Treasury, section 380; Gibson v. Peters, 150 U. S. 342 [14 S. Ct. 134, 37 L. Ed. 1104]. And because he is such officer, a receiver has been permitted to sue in the federal court regardless of citizenship or of the amount in controversy. Price v. Abbott [C. C.] 17 F. 506. In a sense he acts on behalf of the bank. The appointment of a receiver does not dissolve the corporation. Chemical National Bank v. Hart-

ford Deposit Co., 161 U. S. 1, 7 [16 S. Ct. 439, 40 L. Ed. 595]. The assets remain its property. Rosenblatt v. Johnston, 104 U. S. 462 [26 L. Ed. 832]. The receiver deals with the assets and protects them for whom it may concern, including the stockholders; and his own compensation and expenses are a charge upon them. Section 5238 [Comp. St. § 9825]. But a receiver is appointed only when the condition of the bank or its practices make intervention by the government necessary for the protection of noteholders or other creditors. While the receivership continues the corporation is precluded from dealing by its officers or agents in any way with its assets. And when all creditors are satisfied or amply protected the receiver may be discharged by returning the bank to the control of its stockholders or by the appointment of a liquidating agent under Act of June 30, 1876, c. 156, 19 Stat. 63."

Before that Mr. Chief Justice Fuller, in the case of In re Chetwood, 165 U. S. 443, at page 457, 17 S. Ct. 385, 391 (41 L. Ed. 782), had used the following language:

"The receiver was appointed by the Comptroller of the Currency January 14, 1889, and Chetwood commenced his suit July 19, 1890. The receiver was not the officer of any court, but the agent and officer of the United States, as ruled by Mr. Justice Gray, on circuit, in Price v. Abbott [C. C.] 17 F. 506, and by Mr. Justice Jackson, then Circuit Judge, in Armstrong v. Trautman [C. C.] 36 F. 275. And see Porter v. Sabin, 149 U. S. 473, 479 [13 S. Ct. 1008, 37 L. Ed. 815]; Platt v. Beach, 2 Ben. 303 [Fed. Cas. No. 11,215]; Frelinghuysen v. Baldwin (D. C.) 12 F. 395; Armstrong v. Ettlesohn (C. C.) 36 F. 209."

None of the cited cases, however, reflects an analogy of facts or purpose with the case at bar, and unfortunately for counsel and the court no case has been found in the books where a receiver of a national bank has by court action been called to account to the creditors of such bank, and therefore only in a general way do the cases cited lend any aid in the determination of the point here involved.

There is nothing conflicting or inconsistent in the theory that a receiver of a national bank, although being an officer of the United States, is at the same time a trustee, at least in the sense that all public officials having functions and duties to perform are in a position of trust. But public officials generally are not amenable to rendering an account through court procedure to those persons having a public or semiprivate interest in the general administration of duties by that official. It is quite reasonable to assume that the

receiver is performing his duties as an officer of the United States in the direct administration of liquidating a bank organized under the National Banking Act under the direction of the Comptroller, and in such capacity is no more subject to an accounting to some individual who may be directly interested in what he may be doing than would be the Secretary of the Treasury, the Commissioner of the Land Office, or others in the class of public officials in discharging their duties. This theory is somewhat strengthened by the view of the courts, that a receiver is a creature and mere agent of the Comptroller of the Currency, who directs his official acts, and little doubt could be entertained that the Comptroller is in the highest sense an officer of the United States, being appointed by the President. This theory of the superior power of the Comptroller and his direction of the acts of the receiver is expressed by the Supreme Court in a number of decisions. In the case of Kennedy v. Gibson, 8 Wall. 498, at page 505 (19 L. Ed. 476), the court says:

"The receiver is the instrument of the Comptroller. He is appointed by the Comptroller, and the power of appointment carries with it the power of removal. It is for the Comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability. * * *"

Again, in the case of In re Chetwood, supra, at page 457 (17 S. Ct. 391), it is stated:

"The receiver acts under the control of the Comptroller of the Currency and the moneys collected by him are paid over to the Comptroller, who disburses them to the creditors of the insolvent bank. Under section 5234 of the Revised Statutes, when the receiver deems it desirable to sell or compound bad or doubtful debts, or to sell the real and personal property of the bank, it devolves upon him to procure 'the order of a court of record of competent jurisdiction,' but the funds arising therefrom are disbursed by the Comptroller, as in the instance of other collections."

[1] Whether the relief sought by an accounting be against the Comptroller or against the receiver acting under the direction of the Comptroller, if they be officers of the United States administering the duties of the office to which they are assigned, they are accountable only to the court in the event of fraud or errors of law in the matter of the execution of their official acts. And likewise when engaged in such administration, such officials will not be disturbed by the courts. Cosmos Exploration Co. v. Gray Eagle Oil Co., 190 U. S. 301, 23 S. Ct. 692, 47 L. Ed. 1064; United States v. Schurz, 102 U. S. 378, 26 L. Ed. 167; City of New Orleans v. Paine, 147 U. S. 261, 13 S. Ct. 303, 37 L. Ed. 162.

Closely related to this theory is the strong and repeated pronouncement by the courts, that Congress has by the National Banking Act established a full and complete system for the administration of the National Banking Act in itself in which the Comptroller has been vested with general administrative powers and duties, even though they may be judicial in character. Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. Ed. 598.

[2] After a more mature consideration I am of the opinion it must be held as a matter of law, that the receiver of a national bank is an officer of the United States, acting under the express direction of the Comptroller of the Currency, who is charged with the general administration of the National Banking Act specifically committed to him by Congress, including the liquidation of a defunct bank, and although he may be in a sense a trustee for the creditors of a defunct bank he is not subject to the general equity rule, conceding it to be the rule at least for the purposes of the discussion, that a trustee is always and at all times amenable to an accounting to his cestui que trust. If this be true, it would make little difference whether the general regulations of the Comptroller prohibited such accounting or not, although in the case at bar it would appear that the interpretation of the regulations applying to receivers could have no other effect, and in this respect I only need to add, on the strength of Norris v. United States, 257 U. S. 77, 42 S. Ct. 9, 66 L. Ed. 136, that a regulation of the kind and nature here, which is general and does not appear to have been objected to by the Secretary of the Treasury, under whose department the Comptroller is an official, would be deemed to be within the authority of the Comptroller.

By the foregoing I have only meant to say that in my opinion the general principles of equity in regard to an accounting by the ordinary trustee to his cestui que trust do not automatically apply to a receiver of a national bank or to the Comptroller, leaving the way open to the courts should a situation arise in which the court would feel justified in granting such relief. Neither do I mean to say that receivers of national banks are exempt from suit. They are repeatedly brought into court by appropriate process, but these cases would seem to reflect situations involving the individual rights of other creditors being adjudicated by the receiver or Comptroller, together with situations of a similar character. Examples of this class of suits are: Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19

S. Ct. 360, 43 L. Ed. 640, and Davis v. Elmira Savings Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700, involving dividend rights. They differ from a general accounting suit, in that the latter has to do with, and therefore interferes with, the general administration of the Comptroller and receiver in their duties of liquidating a national bank.

[3] It only remains to consider whether a situation out of the ordinary has arisen here so as to entitle the plaintiff to the accounting prayed for. An analysis of plaintiff's cause leads to the conclusion that it rather logically divides itself into two branches. The first branch of the case relates to the matter of accounting, and in this respect the accounting sought relates only to what the receiver himself had done in connection with the administration of his duties, and the specific thing to which the prayer of the petition is directed is the matter of expenses of the receivership. In this respect the administration of the receivership is by the act committed to the Comptroller of the Currency exclusively, and he has as much authority in the matter of incurring and authorizing the necessary expense as would a court in administering a receivership before it.

[4, 5] The other branch of the case relates to discovery, in which it is sought to compel the receiver to exhibit the books of the bank to the plaintiff. The receiver, of course, has had nothing to do with the matter of keeping these books, and a discovery could in the nature of things have little to do with the accounting of the receiver of his own official acts after he took charge of the affairs of the bank. A discovery, as has frequently been pointed out, must be in aid of the general relief sought, which in this case is an accounting. In Everson v. Equitable Life Assur. Co. (C. C.) 68 F. 258, the holding of the court is expressed by the syllabus in the following language:

"*Equity Jurisdiction—Bill for Discovery and Accounting.* Where a bill seeks both discovery and an accounting, the discovery must be regarded, prima facie, as incidental to the accounting, and, if there is no right to an accounting, the bill will be held bad upon demurrer."

In our own circuit, in the case of Griesa v. Mutual Life Ins. Co., 169 F. 509, the general holding is epitomized in the syllabus as follows:

"Where a bill asks both for relief and discovery, the right to discovery is dependent on the right to relief, and, if the bill is insufficient for relief, it cannot be sustained as to discovery."

Furthermore, the admitted facts show that the matters in which a discovery is sought have no connection with the accounting. The discovery, in the nature of an examination of the books, according to the averments of the bill, is sought for the purpose of determining whether or not a right of action for negligence or violation of trust on the part of the officers and directors of the bank exists, upon which a liability might be enforced either by the receiver or in the event of his failure or refusal, by the depositors and creditors of the bank. A discovery of this character could be only logically connected with a suit brought or to be brought for the purpose stated in the bill, and as to whether or not it might be entertained could only be determined by the circumstances which might be presented in a suit for that specific purpose. I assume that the duty of bringing such a suit would primarily rest upon the receiver, and that likewise seems to be the theory of the plaintiff from his pleading and his concessions. If it be the proper theory, with process of liquidation by the receiver still going on, and the receiver not having refused at this particular stage to bring such a suit, it ought not to be determined by the court that his discretion and that of the Comptroller should be interfered with as to the time when he might take any particular steps looking to the full discharge of his duty. The facts disclose rather a co-operative tendency on the part of the Comptroller in this respect.

A collateral branch of the case concerns compromises under the authority of the Comptroller presented to a court of competent jurisdiction. These are specifically authorized by the Banking Act, and it affirmatively appears that all the legal steps have been taken in all matters of compromise in presenting those matters to a court of competent jurisdiction and securing the order of that court before they are consummated. This suit, therefore, is rather in the nature of collateral attack upon a judicial procedure specifically authorized, with an entire lack of any showing of fraud except from what may be denominated as suspicion on the part of the plaintiff.

While it may be conceded that by legislative enactment the courts shall not be defeated in the matter of their jurisdiction over equitable rights and remedies, it is significant that in the Banking Act no public accounting by the receiver is required, or any accounting to the creditors of the bank, but it is specifically provided that the receiver shall report to the Comptroller of the Currency.

A point not discussed in the general prin-

ciple of accounting suits, which suggests further obstacles to plaintiff's ambition, is that the plaintiff, if awarded an accounting, could have no hope of receiving any benefits other than mere information, as all funds chargeable to the receiver are in the hands of the Treasurer of the United States.

There is a suggestion by counsel for plaintiff that a rule exempting the receiver from accounting to the creditors of a bank would place undue and unlimited power in receivers, and particularly the Comptroller of the Currency, and that they would thereby in effect be above the law; but the answer is that Congress in the matters of this kind has seen fit to delegate the necessary powers and duties to the Comptroller, and not to the courts, which the courts have repeatedly held Congress has the right to do, and even the courts themselves have not been free from criticism in regard to the alleged usurpation of power.

For the reasons stated, the court will find generally for the defendant, and the bill may be dismissed at plaintiff's costs, reserving to him his proper exceptions.