212

Court of Appeals of the District of Columbia.
Argued April 2, 1934.

Decided April 30, 1934.

Jesse C. Duke, of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., John W. Fihelly, Asst. U. S. Atty., Charles E. Wainwright, and Angus W. McLean, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from an order and decree dismissing a petition for mandamus.

It appears that on March 4, 1933, the Northeast Savings Bank, a banking corporation then doing business in the District of Columbia, closed its doors, remaining closed after the President's proclamation of March 6, and never thereafter resumed its normal banking functions. On March 14, 1933, a conservator was appointed by the Comptroller of the Currency under the provisions of the Bank Conservation Act of March 9, 1933 (12 USCA § 201 et seq.). On November 15, 1933, a receiver was appointed for the bank and was substituted for the conservator as respondent in this case.

On September 21, 1933, the petitioner filed a petition for mandamus against the conservator and the Comptroller of the Currency, in which petitioner alleged that she was a depositor in and creditor of the closed bank in the amount of $65.24; that the bank was insolvent; that the bank was closed by the order of the Comptroller of the Currency by reason of such insolvency; and that the Comptroller assumed charge of the books and assets of the bank. Petitioner alleged that on August 24, 1933, she made a formal demand upon the respondents for permission to make an examination of the books of the bank in the interest of herself and other depositor-creditors of the bank; that this permission was refused by the respondents without assigning any reason whatever for such decision. Petitioner alleged that she desires to examine the books and records of the bank in order to ascertain the amount which she will receive in settlement of her claim as a creditor; that she desires to ascertain when she may reasonably expect to receive payment of all or part thereof; that she desires to ascertain if the bank was insolvent when past dividends were paid to stockholders, and whether such dividends were paid out of profits of the bank or out of capital or surplus, to the end that proper action may be taken to recover the same or to compel the Comptroller of the Currency or other proper person to recover the same; that she desires to ascertain the amounts of liabilities of the stockholders, officers, and directors of the bank, and of other persons liable therefor, in order that proper action may be taken against such persons, and in order that proper action may be taken against the Comptroller of the Currency or other proper person to compel action against such person. Petitioner therefore prayed that a writ of mandamus should issue to the respondents, requiring them to permit the examination of the books and records of the bank by the petitioner and her counsel; that a rule should be issued forthwith against respondents requiring them to show cause why such a writ of mandamus should not issue. A rule to show cause thereupon was duly issued and served upon respondents.

The respondents filed an answer to the petition wherein, among other things, they admitted that the petitioner at one time was a creditor of the bank in the sum of $65.24, but averred that a dividend of 50 per cent. had been credited thereon, payable upon demand to the petitioner, leaving the petition-

er a creditor in the sum of $32.62. The respondents admitted that they refused to permit petitioner to examine the books and records of the bank up to the time of the filing of the petition for mandamus without assigning any reason whatever for this decision. The respondents alleged that the Comptroller of the Currency after a full and careful consideration of the request of the petitioner and her counsel for an examination of the books and records of the bank determined that the best interests of the bank, its shareholders, creditors, and depositors required that the application of the petitioner and her counsel for such an examination should not be granted; that in reaching such conclusion the Comptroller of the Currency, in addition to other reasons, had in mind (1) a uniform policy established over a period of many years in the administration of closed national banks throughout the country, and closed national and state banks in the District of Columbia, that unofficial examination of such records should not be permitted unless convinced that under the circumstances in each case the examination should accomplish some useful purpose, which the Comptroller of the Currency averred did not exist in this case; (2) that the orderly liquidation of the affairs of closed banks would be seriously interrupted and impaired if unofficial examinations of the books, records, and files of the bank were allowed to its depositors or creditors inasmuch as such a course would not only interfere with and delay the orderly liquidation of the assets of the bank but would materially increase the expense of conservatorship or receivership; (3) that the information requested by petitioner and her counsel was confidential in its nature and the Comptroller of the Currency determined that such information should not be divulged except for a proper purpose and a good and sufficient reason, which facts in this case have not been established to the satisfaction of the Comptroller, who has determined that no good reason exists for the examination requested; (4) the Comptroller of the Currency is charged by law with the examination of the books and records of closed banks, to take possession of such books, records, and assets of such associations and to collect its debts and enforce the liabilities of the shareholders, directors, and others due to the bank, which the Comptroller of the Currency is now engaged in doing; and that (5) the law requires conservators and receivers of closed banks to report to the Comptroller of the Currency, by whom they are supervised and controlled and under whose direction they liquidate the assets of the bank for the benefit of depositors and other creditors; the Comptroller of the Currency in turn accounting under the general direction of the Secretary of the Treasury and reporting to Congress and the Speaker of the House of Representatives.

The respondents furthermore alleged that the Comptroller of the Currency and the conservator are proceeding with the orderly administration of the assets of the closed bank, including the taking over of its books and records, the collection of its assets, and the enforcement of debts and liabilities due to it for the benefit of depositors and creditors, in compliance with the terms of the National Bank Act (48 Stat. 162) and the Bank Conservation Act of 1933 (12 USCA § 201 et seq.). The respondents further alleged that such examination of the records and books would be ineffectual for the objective sought by petitioner, to ascertain the ultimate amount of dividend which may be paid to her, in that the total dividends to be paid would depend entirely upon the future liquidation of the assets of the bank. The respondents for these reasons prayed to be discharged and the petition for mandamus denied.

The petitioner demurred to the answer filed by the respondents upon the ground that it was bad in substance.

The case was heard upon the demurrer, and it was ordered and decreed by the court that the rule to show cause be discharged, and the petition for mandamus be denied; from which ruling the present appeal was taken by the petitioner.

We agree with the decision of the lower court.

The allegations of the petition filed in the lower court disclose that petitioner is a creditor of the closed bank in a very small sum which was deposited a few months prior to the time when the bank was closed. The petitioner does not charge that either the Comptroller of the Currency or the receiver or any officer or agent of the bank had been guilty of any misconduct in the discharge of his duties to the bank either before or after it was closed. No such charge is made by petitioner either directly or upon information and belief. In fact, the petitioner by force of her demurrer to the answer of the respondents admits that the Comptroller of the Currency and the conservator are proceeding with the orderly administration of the assets of the bank, including the taking over of its books and records, the collection of its assets, and the enforcement of debts and liabilities due it for the benefit of depositors and creditors in compliance with the terms of the National Bank

Act and the Bank Conservation Act of 1933. Consequently, it appears that the purpose of petitioner in seeking a writ of mandamus, and demanding a right to examine the books and papers of the bank is rather to satisfy her curiosity than to conserve her interests. However, such an examination of the records and books as the petitioner seeks would be ineffectual for the objective sought by the petitioner, to wit, to ascertain the ultimate amount of dividends which may be paid to her, for the reason that the total dividends to be paid depends entirely upon the future liquidation of the assets of the bank.

Upon this view of the facts it is plain that no cause of action is stated by the petitioner and that the decree of the lower court was right.

Serious questions have arisen in cases wherein the stockholders of national banks have sought the aid of the courts in obtaining the right by mandamus to examine the books and papers of closed banks, generally upon charges of malfeasance, but we are not concerned with such issues in this case, and we are not called upon to express any opinion concerning the merits of such claims. The present case is not brought by a stockholder of a closed bank, but by a creditor who charges no malfeasance on the part of the respondents or any officers of the bank, and the case is decided solely upon the facts and circumstances set out in the pleadings.

The decree of the lower court is affirmed.