## WITTNEBEL v. LOUGHMAN.

District Court, S. D. New York.
Jan. 4, 1935.

Breed, Abbott & Morgan, of New York City (Charles H. Tuttle, of New York City, and Thomas E. Kerwin, of New Rochelle, N. Y., of counsel), for plaintiff.

Dunlap, Otto & McGovern, of New Rochelle, N. Y. (Charles Wainwright, of Washington, D. C., of counsel), for defendant.

PATTERSON, District Judge.

The plaintiff, a stockholder in a failed national bank, has brought suit to restrain the receiver of the bank from impeding the plaintiff's examination of the books and records of the bank. The present motion is by the defendant to dismiss the amended bill as insufficient on its face.

The amended bill is long and discursive. In substance it avers that the plaintiff is and for years has been a large stockholder of the National City Bank of New Rochelle; that the bank failed to open after March 3, 1933; that the defendant was appointed conservator by the Comptroller of the Currency on August 3, 1933, such appointment being followed by appointment as receiver on February 1, 1934; and that the comptroller has made assessment against the stockholders. It is charged on information and belief that the president and other officers of the bank caused its ruin by making large loans of the bank's funds to themselves and to companies in which they were interested, among others a mortgage company and a real estate company; further, that excessive loans were made to others on condition that they buy stock from the officers at exorbitant prices; that the receiver has taken no action against the officers and directors, although the plaintiff laid the facts before him months ago, and has refused to say whether or not action will be taken; that meanwhile the statute of limitations is running in favor of the delinquent officers; and that they have made fraudulent transfers of their individual assets.

The bill goes on to allege that the plaintiff has repeatedly requested the comptroller and the receiver to permit him to see the books and records of the bank at a time convenient to the receiver, but that the requests have been denied with no explanation other than that the comptroller will not permit stockholders of a closed bank to examine the bank's books and records. It is alleged that the plaintiff withheld taking action pending the organization of a new bank to which certain assets of the failed bank were transferred, in order that the interests of depositors might not be jeopardized, but that now the new bank is open and that this suit cannot embarrass the reorganization. The plaintiff cannot commence a representative suit against the officers, it is alleged, without further knowledge of the bank's affairs. The relief demanded is a declaratory judgment that the plaintiff has the right to examine the books and records and an injunction against the defendant's interfering with an examination.

The defendant's motion is for dismissal of the amended bill as failing to state a cause of action. He takes the broad position that under no circumstances have the stockholders of a defunct national bank a right to examine the books and records of their bank in possession of a receiver, except by leave of the receiver; that the refusal of the comptroller or receiver to permit examination is the last word on the matter. I am of opinion that these propositions are untenable and that the amended bill presents a case where a court of equity may give relief.

We start with the rule that prior to receivership a stockholder in a national bank has a common-law right to inspect the books of the bank. The right is qualified by the requirement that the stockholder's purpose must be germane to his interest in the corporation and that his action in pressing his right must be in good faith. Guthrie v. Harkness, 199 U. S. 148, 26 S. Ct. 4, 50 L. Ed. 130, 4 Ann. Cas. 433. In the Guthrie Case, it was decided that the right is firmly grounded in the common law and that there is nothing in the National Banking Act that limits the right. There are similar cases in the state courts with reference to national banks. Winter v. Baldwin, 89 Ala. 483, 7 So. 734; Murray v. Walker, 156 Ky. 536, 161 S. W. 512, Ann. Cas. 1915C, 363; Woodworth v. Old Second National Bank, 154 Mich. 459, 117 N. W. 893, 118 N. W.

581. The fact that the bank is in course of voluntary liquidation makes no difference. Tuttle v. Iron National Bank, 170 N. Y. 9, 62 N. E. 761. Down to the time of receivership, then, the plaintiff's ownership of stock carried with it the right to examine the bank's books and papers, to find out the facts as to alleged malfeasance by directors and officers, and those then in charge of the bank's affairs could not lawfully have blocked the exercise of that right. The question is whether on receivership the right expired or became subject to the arbitrary fiat of the receiver.

As to corporations generally, a stockholder's right to examine the corporate books is not extinguished by receivership. The receiver has possession and custody of the books, but he has no better authority to bar access to them by stockholders than the corporate officers had before receivership. Chable v. Nicaragua Canal Const. Co., 59 F. 846 (C. C. N. Y.); Newcomer v. Miller, 166 Md. 675, 172 A. 242, 92 A. L. R. 1043; People v. Cataract Bank, 5 Misc. 14, 25 N. Y. S. 129; 14 Corpus Juris page 858. In the Cataract Bank Case, supra, Judge Haight held that stockholders in a closed state bank were entitled to see the books over the protest of the receiver. Unless there is a solid distinction between the receivership of an ordinary corporation, including a state bank, and the receivership of a national bank, the stockholder's right of examination in the latter case is not at the mercy of the receiver.

Under the Banking Act the Comptroller of the Currency may appoint a receiver of a national bank for a variety of causes, the most common being when he is "satisfied" of its insolvency. 12 USCA § 191. The duties of the receiver are set forth in section 192: To take possession of the books, records, and assets; to collect the debts, dues, and claims; to sell or compound bad or doubtful claims on court order; to sell real and personal property on like order; to enforce the individual liability of stockholders if necessary to pay debts; to pay all moneys over to the Treasurer of the United States subject to order of the comptroller; and to make reports to the comptroller. Subsequent sections deal with notice to present claims and distribution of assets.

█ The appointment of a receiver does not terminate the bank's corporate existence. Rosenblatt v. Johnston, 104 U. S. 462, 26 L. Ed. 832. It ceases of course to be a going concern. Its affairs are in charge of the receiver rather than of its officers and directors, and the receiver deals with its assets in behalf of creditors and stockholders. Chemical Nat. Bank v. Hartford Deposit Co., 161 U. S. 1, 16 S. Ct. 439, 40 L. Ed. 595; United States v. Weitzel, 246 U. S. 533, 38 S. Ct. 381, 62 L. Ed. 872. The receiver differs from the ordinary receiver in that he is not an officer of the court. He is an officer of the executive branch of the government, the instrument of the comptroller, and the assets are not in custody of the court. Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; United States v. Weitzel, supra; Hulse v. Argetsinger, 18 F. (2d) 944 (C. C. A. 2). The act is to be construed liberally with reference to powers of the comptroller and the receiver, in order that expeditious and just winding up may be achieved. Korbly v. Springfield Institution for Savings, 245 U. S. 330, 38 S. Ct. 88, 62 L. Ed. 326. The comptroller's decision to appoint a receiver because of insolvency is final; the statute in effect so provides by making the power of appointment dependent on the comptroller's becoming "satisfied" of insolvency. So, too, his determination that there is necessity to enforce the statutory liability of stockholders is conclusive, in the sense that such necessity cannot be questioned in ensuing litigation against stockholders. Otherwise prompt and effective liquidation could not be accomplished. Kennedy v. Gibson, supra; Germania National Bank v. Case, 99 U. S. 628, 25 L. Ed. 448; Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. Ed. 598. The power of assessing stockholders, however, is not altogether an arbitrary one. See United States ex rel. Citizens' Nat. Bank v. Knox, 102 U. S. 422, 425, 26 L. Ed. 216.

█ When all this is said in favor of the powers of the comptroller and receiver, the fact remains that the comptroller and the receiver in liquidating the business of a closed bank are administering a trust (12 USCA § 198; Scott v. Armstrong, 146 U. S. 499, 507, 13 S. Ct. 148, 36 L. Ed. 1059) and are amenable to process of the courts in plenary suits when they exceed their powers. In many ways their decisions are not final. Claims erroneously rejected by the comptroller may be established by suit against the bank. Bank of Bethel v. Pahquioque Bank, 14 Wall. 383, 20 L. Ed. 840; Merrill v. National Bank, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640. If the comptroller were to allow claims for which the bank was not responsible, creditors or stockholders would be af-

forded relief by the courts and the comptroller's decision overturned. See Casey v. Galli, 94 U. S. 673, 681, 24 L. Ed. 168. A court of equity in plenary suit will restrain the receiver from carrying out a plan of disposing of the assets which is not a sale. Jackson v. McIntosh, 12 F.(2d) 676 (C. C. A. 5).

There is nothing in the statute or in the decisions interpretative of it that is destructive of the stockholder's right to examine the books of the closed bank or that vests the comptroller or the receiver with arbitrary power to keep the books from the stockholders. The stockholders are still stockholders. They are entitled to any surplus that may remain after payment of debts. Because of such interest they may under certain conditions bring suit in the bank's right against officers and directors who have wasted the assets, in cases where the receiver has refused to bring suit. Brinckerhoff v. Bostwick, 88 N. Y. 52; Ackerman v. Halsey, 37 N. J. Eq. 356. See, also, In re Chetwood, 165 U. S. 443, 17 S. Ct. 385, 41 L. Ed. 782; Moss v. Goodhart, 209 F. 102 (D. C. Mont.). The right to bring such a suit would generally be barren if the comptroller or receiver could arbitrarily deprive a stockholder of an inspection of the books.

There may be instances where a stockholder's examination of the books would be disruptive of plans for reorganization then pending and would thus imperil the interests of creditors and other stockholders. There may be instances where there is no purpose other than curiosity to be served by permitting examination. Such cases may be dealt with when they come up. But where a stockholder makes grave charges of malfeasance against the officers and directors, with the receiver refusing to take action, and alleges facts tending to show that the interests of creditors and stockholders cannot be prejudiced by an examination of the books, no reason is apparent why he should not have the desired examination. It is not perceived how an examination in such a case can be said to impede or embarrass the prompt and effective winding up of the insolvent estate. A bill setting forth such facts makes a prima facie case for relief in court and is sufficient on its face. If the receiver has good cause for withholding the books, he may state it in his answer, after which the case may be determined on the issues raised by the pleadings. Whether or not the facts alleged in this bill can be proved remains to be seen. For purposes of deciding a motion to dismiss the bill as insufficient, however, they must be taken as true.

The receiver relies on Altman v. McClintock, 20 F.(2d) 226 (D. C. Wyom.), and Rasmussen v. Hamilton, 63 App. D. C. 202, 71 F.(2d) 212. In the Altman Case, the suit was by a creditor of the bank, not by a stockholder, and it was admitted that the receiver had furnished the plaintiff with information of the assets and had been generally co-operative. The bill was not dismissed as insufficient on its face, but after trial on the merits. In the Rasmussen Case the suit was brought by a small creditor and no charges of wrongdoing in the conduct of the bank's affairs were made. The Court of Appeals called attention to the fact that the suit was not one by a stockholder and to the further fact that the petition contained no charges of malfeasance by the bank's officers. Neither of these cases is a precedent for the defendant.

The receiver also refers to Boske v. Comingore, 177 U. S. 459, 20 S. Ct. 701, 44 L. Ed. 846, to the effect that a regulation of the Treasury Department forbidding collectors to disclose tax records is valid. But I am not referred to any regulation of the Department relative to the books and records of a failed national bank, and it would be unprofitable to discuss whether any such regulation would be valid.

The defendant has not questioned the resort to a court of equity in contrast to a remedy at law. The remedy commonly used in a case where a stockholder has been denied the right to examine corporate books is mandamus. But this court could not grant mandamus in an original suit of this character. Rosenbaum v. Bauer, 120 U. S. 450, 7 S. Ct. 633, 30 L. Ed. 743; Large v. Consolidated Nat. Bank, 137 F. 168 (C. C. N. Y.). Under the conditions the suit is properly in equity, being not merely one to enjoin interference with the plaintiff's common-law right of inspection, but also in the nature of a bill of discovery in aid of a contemplated suit against the officers of the bank.

The bill sets forth a case for relief, and the motion to dismiss will be denied.