## WITTNEBEL v. LOUGHMAN.*
### No. 82.

Circuit Court of Appeals, Second Circuit.
Dec. 9, 1935.

*Certiorari denied 56 S. Ct. 590, 80 L. Ed. ——.

Dunlap, Otto & McGovern, of New Rochelle, N. Y. (Walter G. C. Otto, of New Rochelle, N. Y., of counsel), for appellant.

Breed, Abbott & Morgan, of New York City (Charles H. Tuttle and Thomas E. Kerwin, both of New York City, of counsel), for complainant-appellee.

George P. Barse and Charles E. Wainwright, both of Washington, D. C., for Comptroller of the Currency of the United States, amicus curiæ.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This suit is by the owner of 935 of the 25,000 shares of capital stock of the National City Bank of the City of New Rochelle to obtain a declaratory judgment that the complainant has a right to examine the books and records of the bank at a time and place that will not interfere with the conduct of its affairs by the defendant.

The bank closed on March 4, 1933, and has not opened for business since that time. On March 21 a conservator was appointed by the Comptroller of the Currency, and on August 3 the defendant Loughman was by him appointed receiver.

The amended complaint alleges that the complainant was induced to retain his stock through false representations by the bank and its officers regarding its financial condition. It also alleges on information and belief mismanagement and fraudulent conduct on the part of the bank and its officers whereby funds of the corporation were unlawfully diverted in various specified ways, and whereby the bank suffered serious losses and the directors and corporations in which they were interested were benefited. While it is not alleged that the complainant has brought any action in his own right, or has filed a stockholder's bill to recover the losses sustained by the bank, it is stated that the statute of limitations is running and that the complainant, by being deprived of the right to inspect the corporate books and records, is unable to ascertain facts on which he may found such actions. It is further alleged that inspection has been demanded and was refused on the ground that the comptroller possessed the

right to administer the affairs of the bank and his receiver had, under his direction, the exclusive right to bring suits for injuries suffered by it.

Judge Patterson denied a motion to dismiss the amended bill of complaint on the ground that the receiver had no better authority to prevent an examination of the books than did the corporate officers prior to the receivership. He said that the receiver differed from a chancery receiver in that he was not an officer of the court but of the executive branch of the government, and added that while the affairs of the company were in charge of the receiver, his appointment did not terminate the corporate existence of the bank. He further added that in liquidating the business of a closed bank the comptroller and receiver were administering a trust and there was nothing in the statute or the decisions interpretative of it destructive of the stockholder's right to examine the books. (D.C.) 9 F.Supp. 465. He likewise, upon a separate motion, struck out the answer and ordered a decree pro confesso because it did not deny the serious charges alleged in the amended complaint ([D.C.] 11 F.Supp. 571), and finally denied a motion to file an amended and supplemental answer setting up the fact that since the filing of the amended answer the plaintiff, on the 28th of March, commenced an action in the Supreme Court against seven directors and one former officer of the bank for the purpose of charging them with the losses occasioned by their derelictions, and on April 10, 1935, the receiver, pursuant to instructions from the comptroller, commenced an action against fourteen former directors of the bank for violations of their official duties.

The complainant made repeated requests to be allowed access to the books and records of the bank so that he might examine them, and his requests had been uniformly declined by the comptroller and the receiver. The comptroller denied the request in a letter dated November 21, 1933. Finally, after the bank had been closed about twenty months, the receiver, on October 29, 1934, wrote to complainant's attorneys in part as follows:

"I am the Receiver of a bank which is now in liquidation. As I understand it, the Comptroller of the Currency has the sole and exclusive right to administer its affairs, and in so doing, I am act-ing as his agent. Conforming to a long course of action, extending over half a century, and based upon the experience which that length of time has demonstrated to be right, it is the position of the Comptroller that we cannot accede to demands by stockholders of a closed bank to examine the affairs of the bank on their own behalf. The cases in support of that position have already been called to your attention.

"I am quite cognizant of the feeling you have, and which you have expressed to my attorneys, that officers of the old bank are being protected by my attitude. In this you are entirely mistaken, and I think your assumptions and speculations in the matter are entirely gratuitous. It might interest you to know that among my other duties some months ago I made a full report to the Comptroller of the Currency of the conditions which I found as Receiver. Undoubtedly the proper agencies of the government will take such action with regard to that report as the facts warrant."

The receiver frankly takes the ground that he has possession of property of the bank, that he is charged with the duty of liquidating its assets, and that under no circumstances can an examination be required by a stockholder, at least unless fraud or collusion in the administration of the trust is shown. This goes too far and leaves no check upon conduct that may become arbitrary and have too little regard for the rights of persons vitally interested in the administration of insolvent banks.

It is manifest that a stockholder of an insolvent national bank is vitally interested in the efficient liquidation of its assets, not only because of his possible right to share in a surplus after payment of the debts, but also because the amount of the assessment on his stock which the comptroller may levy will be directly affected by the success of the receiver in collecting outstanding claims. It is true that a liberal construction has always been placed upon the National Banking Act, so that the liquidation of insolvent banks can proceed without undue interruptions and to as prompt a conclusion as possible. But a recognition of the right of a stockholder to obtain an order for an examination of the books of a bank, in a case where a fair reason for the examination is shown and

where the examination is so conducted as not to inconvenience the receiver in his administration, preserves rights of stockholders that existed prior to the time when the comptroller took over the administration, is not in derogation of any statute, and affords a safeguard against careless administration and arbitrary conduct. It should only be granted where there is a showing of some justifiable reason; otherwise the comptroller might be unduly harassed in his administration.

We think there was enough proof here to sustain the order of the District Court providing for the examination of the books and records of the bank. In the first place, the receiver had notice of the complainant's statement that appeared in his sworn complaint that the officers of the bank had defrauded him personally and had made way with the assets of the bank. An examination of books and records which might substantiate the claim that the bank was insolvent at the very time when its officers were representing that it was in good condition bore directly on complainant's personal cause of action for deceit. Moreover, months went by without the institution of any suit by the receiver against the directors for breach of trust, and only after complainant's right to an examination was sustained was such a suit finally brought. It is said that that, suit now having been brought, the action begun by the complainant in the New York court is displaced. But even if such be the case, he still needs an examination to discover whether he has a sufficient basis for an action against the directors for deceit. Likewise it seems proper to give him access to the records that he may determine whether, in view of the long delay, the suit brought by the comptroller is fortified by all the ammunition which an examination will afford. We affirm the order for an examination not because a stockholder is at all times entitled to such an order as a matter of right, but because the long delay of the receiver in bringing his suit and the alleged cause of action of the complainant against the directors for deceit seem to justify an examination in the case under consideration.

 The Supreme Court has held that an inspection of the books and records of a national bank may be granted at the request of a stockholder where it has not been taken over by the Comptroller of the Currency. Guthrie v. Harkness, 199 U.S. 148, 26 S.Ct. 4, 50 L.Ed. 130, 4 Ann.Cas. 433; Curtis v. Connly, 257 U.S. 260, 263, 42 S.Ct. 100, 66 L.Ed. 222. The appointment of a receiver does not dissolve the corporation and the assets remain its property. Rosenblatt v. Johnston, 104 U.S. 462, 26 L.Ed. 832; Chemical National Bank v. Hartford Deposit Co., 161 U.S. 1, 16 S.Ct. 439, 40 L.Ed. 595; United States v. Weitzel, 246 U.S. 533, 541, 38 S.Ct. 381, 62 L.Ed. 872. If the officers or the receiver fail to sue on demand, a stockholder has the right to bring a representative suit on behalf of the bank to redress wrongs which it has suffered. Ex parte Chetwood, 165 U.S. 443, 457, 17 S.Ct. 385, 41 L.Ed. 782. Such a right would be ineffective if the stockholder could not determine by an inspection whether there was a basis to sustain his cause of action. We can see no reason for so abridging the common-law right as to deprive a shareholder of the means of protecting his interest by an inspection so long as it may be had without undue interference with the administration of the receiver.

In Altman v. McClintock (D.C.Wyo.) 20 F.(2d) 226, the District Court denied a creditor's request for an inspection where the object was to determine whether the receiver should sue the directors. There the receiver appeared to have been properly administering his trust and for that reason the application was rightly denied. But it was said [20 F.(2d) 226, at page 231] that while the general principles of equity in regard to accountings by ordinary trustees "do not automatically apply to a receiver of a national bank or to the comptroller" an inspection might be ordered "should a situation arise in which the court would feel justified in granting such relief."

In Rasmussen v. Hamilton, 63 App. D.C. 202, 71 F.(2d) 212, a creditor made a similar request which was likewise denied, but there was no showing of neglect or misconduct on the part of the receiver or of the officers of the bank at any time and no reason for an inspection was suggested except the futile one of discovering what dividends might thereafter be paid to the creditor who asked to examine the books.

In Chable v. Nicaragua Canal Const. Co. (C.C.) 59 F. 846, Judge Lacombe was dealing with the right of the stockholder of a business corporation to obtain an inspection after the appointment of a receiver. He remarked that the right "is one resting in the discretion of the court, unhampered by any decisions touching such right of inspection while the corporation was still a going concern in the hands of its officers and directors. Ordinarily it would seem that such discretion should be exercised by the court most liberally towards every individual stockholder who shows some reason other than mere idle curiosity which induces him to ask for the inspection."

In Newcomer v. Miller, 166 Md. 675, 172 A. 242, 92 A.L.R. 1043, inspection of the books and records of a business corporation in the hands of a receiver was allowed at the suit of a stockholder where the receiver was charged with fraud.

In People v. Cataract Bank, 5 Misc. 14, 25 N.Y.S. 129, Judge Haight ordered the receiver of a New York state bank to permit a stockholder to examine its books even though no particular reason justifying an inspection was shown.

Where a national bank has been placed in the hands of a receiver by the Comptroller of the Currency, its assets are not in the possession of the court, but are under the control of an official liquidator by virtue of a system of administration and liquidation created by statute and containing many safeguards. In such circumstances, there should be good reasons for permitting stockholders to inspect corporate books and papers. Good reasons, however, were shown in the present case and an inspection was properly granted.

By inadvertence an unrestricted inspection seems to have been allowed by the court below although the amended complaint recognized that an inspection should only be had "at a time and place and under circumstances which would not interfere with the conduct of the affairs of the bank or with the discharge by the defendant of his duties as Receiver * * *." The limitation is doubtless taken for granted, but had better be expressed.

Subdivision 3 of the decree of April 1, 1935, is amended so as to contain the above limitation, and with that modification, the decree and the orders appealed from are

Affirmed.